In re MARRIAGE OF Bonnie L. POWERS and Gary O. Powers.

Upon the Petition of Bonnie L. POWERS, Appellant, and concerning Gary O. POWERS, Appellee.

No. 2-57147.

Supreme Court of Iowa.

March 19, 1975.

Engelbrecht, Ackerman & Boveia, Waverly, for appellant.

William L. Wegman, New Hampton, for appellee.

Heard by REYNOLDSON, Acting C. J., and MASON, LeGRAND, REES and McCORMICK, JJ.

REES, Justice.

This is an appeal by petitioner Bonnie Powers from a trial court order denying her application for modification of those provisions of a dissolution decree granting respondent custody of three minor children. We affirm trial court.

Petitioner Bonnie Powers and respondent Gary Powers were married on July 24, 1960 and their marriage was dissolved by decree entered May 10, 1971. Gary was granted sole custody of the three minor children of the parties, Craig, Suzanne and Lori, who were aged 8, 7 and 5 respectively at the date of the entry of the decree. Bonnie was granted weekly visitation rights.

On March 19, 1973 Bonnie filed an application for modification of the original decree in which she alleged material and substantial changes had occurred in the circumstances considered and contemplated by trial court when it granted custody of the three children to Gary, and that those changes in circumstances require transfer of the children to her. Hearing on her application was first had on August 29, 1973. After subsequent hearings, trial court entered an order and decree on February 13, 1974 denying Bonnie's application

on grounds she had failed to establish a sufficient change in circumstances to justify a custodial change of the children.

Bonnie contends on this appeal that trial court abused its discretion in refusing to modify the decree to grant her permanent custody of the three children. She contends trial court failed to give weight to the following factors which she asserts were not contemplated by the court when it entered the original decree granting custody of the children to Gary:

1) Gary and Bonnie had reached a reconciliation within two months after the dissolution decree was entered and resumed amicable relations to the extent Gary spent some time in Bonnie's home and actually took up permanent residence with her for several months.

2) Gary's parents have assumed a large share of the responsibility for the care of the children since 1971.

3) Gary's mother, who resides in the home with Gary and the children, is afflicted with Parkinson's disease and had just prior to the hearing undergone extensive surgery.

4) Bonnie has discontinued working outside her home.

5) The children have expressed a preference to live with Bonnie.

6) Gary had contracted a serious illness after the entry of the original decree and was unable physically to care for the children's material needs and educational requirements.

Following the dissolution of their marriage, Gary and Bonnie began spending time with each other in Bonnie's home in Mason City. By July 1972 they had resumed living together in a farm home near Jesup. The children moved to the farm and attended school in Jesup while their parents lived together.

In August of 1972 Gary was diagnosed as having Hodgkin's disease. He was treated at the Mayo Clinic at Rochester, Minnesota and ultimately underwent several operations to correct or alleviate his condition. After his release from the hospital in Rochester, he returned to the home near Jesup and began a course of cobalt treatments in Waterloo continuing through December 1972.

In early 1973 the relationship between Gary and Bonnie again broke down and Bonnie removed the children from the home near Jesup to an apartment in Oelwein. The children were later returned to the home Gary shared with his parents in New Hampton.

Gary resumed regular employment at the John Deere Tractor Company in Waterloo in April 1973, and at the time of the hearing on the application to modify his health was characterized as good. He has apparently suffered no relapse in the condition which required his surgery in 1972.

In the interim between the filing of her application for modification and the hearing thereon, on June 15, 1973, Bonnie married one Richard Hassler. At the time of the hearing she had discontinued working outside the home and was living with her new husband on an acreage southeast of Oelwein. Hassler was employed at a factory in Oelwein and had several children from prior marriages, none of whom resided in the home with Hassler and Bonnie.

We must consider this appeal against the foregoing factual backdrop.

■■■ I. No unusual legal principles are involved in this appeal. We have always accorded trial courts considerable discretion in matters of this kind even though we review the case *de novo*. We have consistently said that on applications for the modification of custody arrangements, the party seeking the change in custody has the burden of showing the circumstances which existed at the time the original decree was entered have so materially and substantially changed that a transfer of custody is indicated. Hagen v. Hagen, 226 N.W.2d 13 (Iowa, filed February 19, 1975); In re Marriage of Link, 205 N.W.2d 751, 752 (Iowa

1973). The parent seeking to obtain custody of minor children from the other parent must show some superior claim based on his or her ability to minister, not equally, but more effectively to the well being of the children. Hagen v. Hagen, supra; Crary v. Curtis, 199 N.W.2d 319, 320 (Iowa 1972); Spotts v. Spotts, 197 N.W.2d 370, 371 (Iowa 1971). The best interests of the children remain in this case as it does in all cases involving the question of custody, the first and governing consideration. In re Marriage of Moorhead, 224 N.W.2d 242, 244 (Iowa 1974); Rule 344(f)(15), Rules of Civil Procedure; In re Marriage of Dawson, 214 N.W.2d 131, 132 (Iowa 1974). In deciding that question courts seek neither to punish one parent nor to reward the other. In re Marriage of Bare, 203 N.W.2d 551, 554 (Iowa 1973).

II. From our review of the record, we conclude the children involved here have not suffered or wanted for attention in their present home. While all three have at one time or another expressed a desire to live with Bonnie and have indicated some dissatisfaction with the home they occupy with Gary and his parents, it would appear that each, in expressing that desire, was motivated at least in part by Bonnie's offer of material things. A clinical psychiatrist testified he felt the best interests of the children would be served by placing them with Bonnie, but indicated his opinion was based largely on the expressed preference of the children to live with their mother.

In its order denying Bonnie's application for modification of the existing custody arrangement, trial court made extensive fact findings, all of which are supported by the evidence and are generally in accord with the foregoing recited facts. Trial court determined the only change in circumstances not contemplated when the decree of dissolution was entered granting custody of the children to Gary was the remarriage of Bonnie and her incidental acquisition of an adequate home for the children near Oelwein. The trial court concluded that sole change in circumstances did not justify or warrant a modification of the existing custody arrangement.

We agree with trial court's conclusions and findings. While Bonnie's remarriage and the children's occasionally expressed preference to live with her are circumstances worthy of consideration, they are not circumstances which in the light of the entire record are sufficient to warrant a change in custody. Having reviewed that entire record, we conclude trial court was right in refusing to change the custody of the minor children involved in this case. We affirm trial court.

Affirmed.