**Nancy DAVIS (formerly known as Nancy Davis Borgen), Appellant,**

v.

**Arnett Douglas DAVIS, Appellee.**

**No. 2–57654.**

Supreme Court of Iowa.

Jan. 21, 1976.

Erickson, Seckington, Laughlin & Huston, Urbandale and Kermit M. Beal, Lawrence, Kan., for appellant.

Melio A. Tonini and James M. Sullivan, Des Moines, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and REYNOLDSON, JJ.

REES, Justice.

We are required by this appeal to decide which of the parties is entitled to the custody of their three children, Laura, Theresa and Michael, aged 16, 14 and 12, respectively. The parties were divorced on December 4, 1964, at which time the custody of all three children was placed with the mother (Nancy). She removed with the children to Kansas shortly after the entry of the decree, the move having been contemplated at the time the decree was entered.

Defendant (Douglas) was permitted by the terms of the decree to visit the minor children at reasonable times and places and to have the children with him for a 30-day period during the summer of each year. Although the decree was not formally modified, the parties agreed between themselves that defendant was to be privileged to have the children on alternate holidays in addition to the visitation rights accorded him by the decree. On December 18, 1973, an ex parte order was entered granting Douglas the custody of the three minor children from four o'clock, p. m. on December 21, 1973, to and including the day prior to the end of the school vacation in January of 1974, and he was given the right to take them from their Kansas home to his home in Iowa.

While the children were in Iowa on the visit, Douglas filed his application to modify the decree, alleging therein that a change of circumstances had occurred such as to justify such modification and specifically asserting therein plaintiff was not a fit person to have the care, custody and control of the children at that time. He asked the decree be modified to fix the permanent custody of the children in him. On January 28, 1974, Nancy filed her application to modify the decree to provide for support money payments in an amount greater than that of the original decree.

After hearing, trial court on February 6, 1974, filed its "Temporary Order" in which it directed that the original divorce decree be temporarily modified to provide custody of the three children with the defendant, and directed that further hearing without need for showing a change in circumstances be held during the first week in June, 1974. The court, in said order, directed the Polk County Juvenile Probation Department to investigate the home conditions of Nancy and also to secure a psychological examination of Nancy to be furnished the court at the June hearing.

On June 7, 1974, after hearing, a further and additional temporary order was entered continuing the custody of the three children with the defendant, subject to reasonable rights of visitation on the part of the plaintiff. In the order of June 7, the court permitted plaintiff to have the custody of the children from June 8, 1974, until June 20, 1974, pending the date of final hearing on the issue of permanent custody.

Hearing was commenced on August 15, 1974, culminating, after an extended hearing and reception of evidence, with the filing of extensive findings of fact, conclusions of law, and an order directing that the order of February 6, 1974, be continued to provide temporary custody of the three minor children with defendant subject to reasonable rights of visitation by plaintiff. Trial court further ordered final hearing be

held at the end of the school semester, with counsel being directed to agree on a date and consult with the court in setting a specific time for hearing. On October 2, 1974, two members of this court determined the order of September 17, being an order maintaining temporary custody of the children in defendant, was appealable, and stayed the operation of the order pending determination of the appeal. This had the effect of returning the children to plaintiff's custody pending decision of this appeal. Despite the fact that the parties were by said order reminded that the expeditious disposition of the appeal depended in large part upon the diligence of counsel, we note the appendix was not filed with this court until September 15, 1975.

In her appeal Nancy now contends the trial court erred in changing the custody of the minor children, even on a temporary basis, and in finding that defendant had established by a preponderance of the evidence a material change of circumstances rendering appropriate a change of custody of the children from her to the defendant.

██ I. In matters of this character, where it is claimed a change of circumstances since the entry of the decree of divorce justifies a transfer of custody, our first and governing concern is the best interests of the children. Rule 344(f)(15), Rules of Civil Procedure; *Zaerr v. Zaerr,* 222 N.W.2d 476, 477 (Iowa 1974); *In re Marriage of Pokrzywinski,* 221 N.W.2d 283, 284 (Iowa 1974). The non-custodial parent seeking a change in custody must prove an ability to minister more effectively than the custodial parent to the well being of the children; it is not enough to show they would be just as well off. *In re Marriage of Pokrzywinski, supra; Schulz v. Schulz,* 195 N.W.2d 131, 132 (Iowa 1972). The specific question before us here, as it was before the trial court, is whether the non-custodial parent had established by a preponderance of evidence that conditions since the entry of the divorce decree had so materially and substantially changed that the best interests of the children made it expedient to award their custody to the defendant.

In his petition to modify the decree to change the custody of the children to him, Douglas asserted Nancy was then estranged from her husband, Charles Borgen, and that it would therefore be in the best interests of the children to have their care, custody and control awarded to him (Douglas). The record establishes that Nancy had married Charles Borgen after her removal to the State of Kansas, and that in truth a decree of divorce had been entered sometime late in 1973. Douglas had himself remarried to Rita Catherine Davis on December 31, 1966. He had also been married twice prior to his marriage to Nancy. His first marriage, which occurred in 1953, terminated by divorce in 1956, and custody of two children born to that marriage was awarded to his first wife. His second marriage in 1957 terminated by divorce after about one and a half years.

██ Our review is *de novo,* and while we give weight to the trial court's findings of fact, especially in matters involving credibility, we are not bound by them. Rule 344(f)(7), R.C.P.

We have little doubt that both Nancy and Douglas love the children, or that the children have great affection for both parents. The children have, from time to time, expressed a preference to live with Nancy, but have also at other times expressed a preference to make their home with Douglas. While we consider the preferences of the children, we do not feel the record before us clearly establishes that they had a distinct preference to be placed in the home of either parent. In any event, we have said that the wishes of a child, though not controlling, are entitled to some weight, although they are entitled to less weight in a proceedings to change custody than in an original hearing. *In re Marriage of Woodward,* 228 N.W.2d 74, 76 (Iowa 1975), and citations; *Halstead v. Halstead,* 259 Iowa 526, 535, 144 N.W.2d 861, 866, and citations.

II. At hearing, several professionals testified, and in answer to questions posed to them, recommended the placement of all three children with Nancy. Ruth Ann Bean, Chief Probation Officer for the juvenile court of Lawrence, Kansas, recommended that permanent custody of the children remain with Nancy. Thelma Gordon, a high school counsellor in Lawrence, Kansas, also recommended the retention of the children in Nancy's custody. Dorothy Sturdevant, psychologist for the joint county system of Marion, Warren and Jasper Counties, recommended that the custody of the children be returned to Nancy without delay. Dr. Carol L. Barker, Chief Psychologist, Des Moines Child Guidance Center, recommended the continued custody of the children with Nancy. Dr. Ervin A. Rothrock of Lawrence, Kansas, who evaluated Nancy at the request of the Director of Court Services of the juvenile court of Polk County, reported by letter in the record his evaluation of Nancy as a reasonably stable individual who showed no characteristics which would lead to any question as to her ability to be an adequate mother to her children.

The testimony of these professionals in the field of child psychology and child guidance all tend to convince us the allegations of the defendant's application to modify the decree on the basis that Nancy was not a fit person to have the continued custody of the minor children was without foundation.

III. It must be remembered the children had been in Nancy's custody at least since the entry of the earlier decree of divorce in 1964, and undoubtedly for some period prior thereto during the pendency of the action, continuously to the date of the entry of the ex parte order of December 18, 1973, except for visitations with the defendant during said period. The children had made adequate progress in school, had posed no disciplinary problems and there was no indication from any of the professional child guidance people who testified that their development had been anything other than normal.

Several letters directed to Nancy from the three children were introduced as exhibits at the hearing—seven from Theresa, five from Laura, and three plus a Mother's Day card from Michael. In all of the letters the children expressed affection for their mother and in several they indicated their desire to be returned to her custody. All of the letters were written in the interval between the December 18, 1973, ex parte order and the hearing culminating in the order of September 17, 1974.

The ambivalence of the children disclosed by the record leads us to conclude we cannot be guided in our determination of the questions presented to us here by their expressions of preference for either parent as respects their custody.

IV. In sum, our *de novo* review of the record impels us to the conclusion the defendant failed to establish by a preponderance of evidence that conditions in the home of Nancy had so materially and substantially changed that the best interests of the children dictated the trial court award their permanent custody to him. Under our repeatedly stated rule that custody of children who are receiving proper care should not be disturbed in the absence of cogent or compelling reasons, we must hold it was error for the trial court to transfer the custody of the three children to the defendant. We therefore reverse the order of the trial court and direct that Nancy Davis continue to have the custody of her three minor children as provided in the original decree of divorce.

V. No disposition has been made of the application of plaintiff, Nancy Davis, to modify the decree with respect to the provisions thereof having to do with the amount of child support defendant is required to pay for the support of the minor children. This case is therefore remanded for proper disposition of said application to modify.

VI. In her brief and argument appellant requests us "to reverse the decision of the trial court as to custody of her children and

remand the matter to the district court with directions to enter an order regarding her request for increased child support and attorney's fees."

No application for attorney's fees is on file with this court. We are therefore unable to determine the fees to which appellant is entitled. On remand trial court is directed, on hearing Nancy's application to modify the provisions of the decree with regard to the child support obligation of appellee, to fix fees to which appellant is entitled, including fees for the prosecution of this appeal.

This case is therefore reversed and remanded.

Reversed and remanded.