In re the MARRIAGE OF Rose Marie BROWN and Randall Lynn Brown.

Upon the Petition of Rose Marie BROWN, Petitioner,

and Concerning

Randall Lynn BROWN, Respondent.

No. 3–59370.

Supreme Court of Iowa.

Nov. 17, 1976.

Fred H. McCaw, Dubuque, for appellant.

Paul L. Wenske, Manchester, for appellee.

Submitted to MOORE, C. J. and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

LeGRAND, Justice.

On April 10, 1975, a dissolution decree was entered terminating the marriage of Rose Marie Brown (now Rose Marie Hauschild) and Randall Lynn Brown. The decree awarded custody of their minor child Travis James (then approximately one-and-a-half years old) to his mother.

The matter is now here on the application of the boy's father asking that custody be transferred to him. The trial court modified the decree and awarded custody to the father. Rose Marie appeals and we reverse.

There were five witnesses at the modification hearing—both parents, both paternal grandparents, and Judy Colender, a social worker for the Department of Social Services of Delaware County.

Our review is *de novo*. The welfare of the child is the controlling factor to be

**4**

taken into consideration. *Dworak v. Dworak*, 195 N.W.2d 740, 742 (Iowa 1972).

 Modification of a dissolution decree is allowed only when there has been a material and substantial change in circumstances since the date of the original decree or since the date of a prior modification concerning the same issue being then raised. *Dworak v. Dworak, supra.* When the relief sought affects custody, support, or visitation, the change of circumstances must relate to the welfare of the child.

 The applicant has the burden of showing by a preponderance of the evidence substantial and material changes in circumstances which make the modification expedient or necessary. It must appear a new custodial arrangement will better serve the child's well-being. *Davis v. Davis*, 237 N.W.2d 455, 457 (Iowa 1976); *Mears v. Mears*, 213 N.W.2d 511, 514-515 (Iowa 1973); *Crary v. Curtis*, 199 N.W.2d 319, 320 (Iowa 1972).

 If we were determining custody for the first time, the evidence, no doubt, would justify an award to either parent; but that choice was made when the original decree was entered. Randall must now show Travis' long-range welfare will be better—not merely equally—served in his custody rather than Rose Marie's. In the present case we find no circumstances to warrant a change of custody.

 The trial court relied almost entirely upon the fact of Rose Marie's remarriage. We discussed the inevitable effects of remarriage in *Eddards v. Suhr*, 193 N.W.2d 113, 116 (Iowa 1971). The extent to which that circumstance is entitled to consideration must be determined on a case-by-case basis.

Not surprisingly, the interested parties each claim to be able to better care for Travis. The only disinterested witness, Mrs. Colender, recommends no change of custody.

There was evidence Travis uses "bad language." Both parents deny being responsible for this habit. Certainly the record does not permit a finding of fault concerning this matter.

The trial court's findings stress the fact that Travis is confused because of the dual father roles played by Randall and by Rose Marie's present husband. The boy is now two years old and it would indeed be unusual if there were no confusion. This is an unfortunate but inevitable risk in every divorce involving children. If Randall should remarry—a not unlikely prospect—the same confusion would result concerning the mother image as now exists concerning the father.

 In the present case the evidence falls far short of supporting a custodial change on this ground. Rose Marie's new marriage appears to be a good one. The record shows the conditions under which Travis was living with his mother were adequate and satisfactory. He was well cared for, and he was a happy and well-adjusted little boy. Under such circumstances custody should remain as originally fixed. *Schoonover v. Schoonover*, 228 N.W.2d 31, 34 (Iowa 1975); *In Re Marriage of Pokrzywinski*, 221 N.W.2d 283, 286 (Iowa 1974).

 Randall says he has had custody of Travis since April 5, 1976, and argues another change should be avoided. *See Norenberg v. Norenberg*, 168 N.W.2d 794, 798 (Iowa 1969). However, the intervening time here is considerably shorter than in *Norenberg* and, even more important, we do not have the active and demonstrated ill will and anomosity which made a custodial change imperative in *Norenberg*.

 Prior to the modification hearing, an order on Randall's visitation rights was entered. This became inoperative when he was awarded custody. In view of our conclusion, Randall's visitation privileges again become important. We hold visitation rights provided for in the order of October 10, 1975, should be restored.

The order modifying the dissolution decree as to custody is reversed. Randall's visitation rights shall be controlled by the order above referred to.

REVERSED.