**IN THE COURT OF APPEALS OF IOWA**

No. 16-1023
Filed May 3, 2017

**IN RE THE MARRIAGE OF STEPHANIE R. ROSE
AND SHANE A. ROSE**

**Upon the Petition of
STEPHANIE R. ROSE,
n/k/a STEPHANIE R. MILLER,**
        Petitioner-Appellee,

**And Concerning
SHANE A. ROSE**,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Clinton County, Mark D. Cleve,

Judge.


        Shane Rose appeals the district court's modification of a dissolution

decree awarding physical care of the parties' child to Stephanie Miller.

**AFFIRMED.**


        Judd J. Parker of Parker Law Office, Clinton, for appellant.

        Jennifer M. T. Olsen of Olsen Law Office, Davenport, for appellee.


        Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Shane Rose appeals the district court's modification of a dissolution decree awarding physical care of the parties' child to Stephanie Miller, formerly known as Stephanie Rose. We find there was a substantial change in circumstances justifying modification of physical care and Stephanie is able to provide superior care. Accordingly, we affirm.

## I.  Background Facts and Proceedings

Stephanie and Shane were divorced on August 29, 2014. The dissolution decree awarded joint legal custody and shared physical care of the parties' child. The decree also required the consent of both parties for decisions regarding the child. The parties were unable to agree on a plan for the child's education. Shane was adamant that Stephanie or another family member homeschool the child, and Stephanie believed that the child would be better served by attending preschool and kindergarten to work on his needed socialization.[1]

This dispute increased conflict between the parties and resulted in a breakdown of communication. Shane required a witness to be present anytime he spoke with Stephanie or he would not meet with her and text messages from both parties became contentious, rude, and unproductive. Communication between the child and Stephanie was limited when the child was in the father's care. When the child was in the father's care, Shane would not let the child attend daycare or preschool. Stephanie was unable to take the child on vacation for two weeks in the summer, as provided in the decree, because the parties could not agree if notice was given on time. Stephanie attempted to enroll the

---

[1] Shane was homeschooled as a child but did not graduate from high school.

child in swimming lessons, which he eventually attended, but Shane resisted, claiming the schedule was unacceptable and he questioned the methods, hours, and techniques that would be used. Shane also reported to Stephanie's employer, a day care and preschool, that she had earlier physically abused a child in her care. This lead to an investigation by both the employer and the Iowa Department of Human Services (DHS) and the allegation proved to be unfounded.

Less than a year after the entry of the dissolution decree, Stephanie filed an application to modify the decree. The application for modification requested, among other things, physical care of the child. After the application was filed, the child began counseling by agreement of the parties. Trial was held March 28-29, 2016. The district court entered its ruling April 21, and modified the decree to award physical care to Stephanie. Shane now appeals.

## II. Standard of Review

Our review of equitable actions is de novo. Iowa R. Civ. P. 6.907. We are bound to examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). We will defer to the district court's determinations of credibility as the court has a unique opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III. Physical Care

### a. Substantial Change in Circumstances

In order to modify a dissolution decree there must be "a change in circumstances since the date of the decree which substantially relates to the

welfare of the children and which was not within the contemplation of the parties and the court at the time the decree was entered." *In re Marriage of Wagner*, 272 N.W.2d 418, 421 (Iowa 1978). The party seeking the modification "faces a heavy burden." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted). Additionally, an "important factor to consider in determining whether joint physical care is in the child's best interest is the ability of the spouses to communicate and show mutual respect." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007).

Simple disagreements between parents over issues of parenting the child should not enable a parent to quickly return to the court for a modification of a dissolution decree. Granting a modification at such an early stage, before the emotions of the dissolution have been allowed to subside, creates a risk of unnecessary disruption in the child's life and waste of judicial resources. "However, Iowa courts have 'modified custody when shared custody provisions . . . incorporated into the decree have not evolved as envisioned by either of the parties or the court.'" *Harris*, N.W.2d at 441 (internal citations omitted). Iowa courts have also modified custody when it becomes clear parents "cannot cooperate or communicate in dealing with their children." *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct.App.1998).

The district court found the level of conflict between the mother and the father was far beyond what either party had expected at the entry of the original decree, the father's insistence a witness be present at any meeting of the parents was a burden on parties' ability to co-parent, and the level of conflict between the parties was negatively affecting the child more than had been contemplated by

the original decree. We agree with the district court's findings. The original decree was entered with the understanding the level of conflict between the parties would be minimal, the parties could effectively and freely communicate, and the child would not suffer unduly from the co-parenting structure. Additionally, both parties admitted in text messages to each other the decree had become unworkable between them. The parties have failed to limit conflict or communicate in an effective way and have caused the child to bear the negative consequences of their animosity.

### b. Superior Care

A custody arrangement should only be "disturbed only for the most cogent reasons." *Harris*, 877 N.W.2d at 440. "If both parents are found to be equally competent to minister to the children, custody should not be changed*." In re Marriage of Whalen*, 569 N.W.2d 626, 628 (Iowa Ct. App. 1997) (citations omitted). "A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

The district court found the mother was able to offer superior care. We agree. Even though custody was divided between the parents, the mother consistently acted as the child's primary caregiver. The mother brought the child to medical appointments, including therapy, acted as the primary contact for education and child care, and administered and organized the child's life to a greater degree than the father.

After the parties began to argue about the future of the child's education, the father escalated the conflict and attempted to punish the mother for refusing

to allow the child to be homeschooled. "In determining custody we can give great weight to a parent's attempt to alienate a child from [the] other parent if evidence establishes the actions will adversely affect a minor child." *In re Marriage of Winnike*, 497 N.W.2d 170, 174 (Iowa Ct. App. 1992). We find the father's behavior of escalating conflict between the parties has adversely affected the child. Although the mother has, in part, increased the tensions between the parties, these factors lead us to conclude the mother is able to offer superior care, and therefore, the modification of the decree is proper.

The facts of this case present the rare circumstance where modification of a dissolution decree is proper after such a short period of time. The level of conflict between the parents, about both daily parenting issues and larger issues which will continue to arise, has undermined their ability to communicate and made co-parenting, as contemplated by the original decree, impossible. This case is not a simple disagreement between the parents over isolated issues related to parenting. Instead, it is a rare situation of systemic, fundamental, and complete disagreement between the parents. The exceptional nature of this case leads us to find modification of the dissolution decree is appropriate.

**AFFIRMED.**